IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
                                                     :
ERIC J. STIGGLE, SR.                                 :      3:02 CV 536 (EBB)
                                                     :
v.                                                   :
                                                     :
LOUIS J. FUSARO                                      :      DATE: MAY 12, 2004
                                                     :
-----------------------------------------------------x
```

RECOMMENDED RULING ON DEFENDANTS' MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT

On March 26, 2002, plaintiff, then an inmate at the Cheshire Correctional Institute, commenced this action, pro se, against multiple members of the Norwich Police Department, alleging police brutality as the result of his arrest on August 13, 2001. (Dkt. #3).[1]  At various points in this litigation, starting on August 23, 2002 through August 6, 2003, defendants have sought to stay these proceedings, as defendants are insured under a liability insurance policy issued by the Legion Insurance Company, which was placed into rehabilitation by the Pennsylvania Commonwealth Court; the Pennsylvania court ordered an automatic stay of all proceedings against Legion's insureds. (Dkts. ##16, 22, 52, 55, 60, 62, 64, 69, 74, 75 & 76).

On February 23, 2004, defendants filed the pending Motion to Enforce Settlement Agreement and brief in support (Dkts. ##78-79),[2] as to which plaintiff filed his brief in opposition on March 23, 2004.  (Dkt. #80). The matter was referred to this Magistrate Judge on April 28, 2004 (Dkt. #81), and an evidentiary hearing was held before this Magistrate

---

[1]During the course of the litigation, plaintiff was transferred to Osborn Correctional Institution in Somers and to Gates Correctional Institution in Niantic, and by the time of the evidentiary hearing on the pending motion, was out on parole.  (See Dkts. ##19, 65, 80).

[2]Attached to defendants' brief was a copy of a Stipulation of Dismissal, dated February 2, 2004, signed by both parties, and a General Release, dated February 9, 2004, signed by plaintiff.

Judge on May 6, 2004, at which plaintiff was the sole witness.[3]

For the reasons stated below, defendants' Motion to Enforce Settlement Agreement (Dkt. #78) is hereby granted.

## I. FACTUAL FINDINGS

Some time prior to February 3, 2004, plaintiff had two oral communications with defense counsel Melissa Scozzafava about their mutual desire to settle this case, as plaintiff was intending to relocate out of state and wanted to settle this case and a related state case for the extent of his medical expenses.[4] On February 3, 2004, a secretary from Attorney Scozzafava's law firm sent a letter to plaintiff, in which she attached a Stipulation of Dismissal for this federal case, a Withdrawal for the state case, and General Release for both cases, for plaintiff to sign (Exhs. A, A-1, C & D); plaintiff recalls having received the Stipulation of Dismissal and the General Release, but did not recall having received the letter. On or about February 5, 2004, plaintiff signed the General Release (but did not have his signature notarized) and signed the Stipulation of Dismissal (Exhs. A, A-1 & C), and returned them to Attorney Scozzafava's office, which received them four days later. (Exh. C). That same day, February 9, 2004, plaintiff was contacted by a secretary at this law firm and was told that he needed to come to their office to execute another General Release, as his signature had not been notarized. Plaintiff was under the impression that as soon as that was accomplished, he would receive his settlement check. When plaintiff traveled from Norwich to Waterbury that same day, he executed another General Release, this time with his

---

[3] Exhibits A, B & E have been placed under seal, as they contain the amount of the settlement, which is confidential. Exhibits A-1, B-1 and E-1 are redacted versions of these exhibits, in which the settlement figure has been omitted.

[4] On January 29, 2004, Attorney Scozzafava apparently extended a written offer to plaintiff (Exhs. E & E-1), although plaintiff does not recall having received this letter. The related state case is Stiggle v. Fusaro, No. CV 03-0566228, pending in the New London Superior Court.

signature notarized. (Exhs. B & B-1).[5] However, defense counsel did not issue a check because that same day, her office received a copy of a letter sent by the Connecticut Bureau of Child Support to an attorney representing plaintiff in an unrelated family matter, informing such attorney of the existence of plaintiff's significant arrearage for child support. (Exh. F)(for identification purposes only). Plaintiff testified that he was not aware of this child support arrearage until February 11, 2004.[6]

Plaintiff testified that "exactly" one-half hour after he left Attorney Scozzafava's office, while he was still driving on I-84, he received a return telephone call from an attorney who was representing another plaintiff in an alleged police brutality claim against the Norwich Police Department. Plaintiff testified that he had learned about this other incident about two weeks earlier from a newspaper article, already had spoken with the other alleged victim, and had placed a telephone call to this attorney, who did not return his phone call until then. Plaintiff did not remember the attorney's name, but only that he practices in Hartford. Plaintiff further testified that based upon this telephone call, he decided he did not want to settle this lawsuit, but instead "wants to go to trial." He immediately placed a telephone call to Attorney Scozzafava, thus precipitating the pending motion.

## II. DISCUSSION

Defense counsel argued that plaintiff's scenario does not make sense, and that

---

[5]Plaintiff acknowledged that Exhs. A & B are identical, and claims that he had never read either document until he sat in the courtroom on May 6, 2004, although he had read every other filing made by defendants previously.

He also disputed the amount of the settlement, whether it was for the amount of the medical bills or $100 more than the amount of the bills; he acknowledged, however, that the amount was irrelevant, in that he would not recoup any money from this settlement, due to the outstanding medical bills and lien for child support. Defense counsel explained that the $100 discrepancy was due to a statutory requirement for a deductible once the Guaranty Fund took over for the insolvent insurance company.

[6]Plaintiff testified that he owes only about half the amount that the state claims.

plaintiff is simply suffering from "buyer's remorse." Plaintiff argued that he is not learned in the law, concedes that he is unlikely to retain the proceeds of any verdict since the money will all go to his back medical bills and back child support, but that defendants need to be punished.[7]

As this Magistrate Judge previously has ruled:

> In order to reach a valid settlement agreement, the parties must voluntarily enter into the agreement and the parties must mutually assent to the terms and conditions of the agreement. Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425, 432 (D. Conn. 2002)(citation omitted); Brown v. Nationscredit Commercial, 2000 U.S. Dist. LEXIS 9153, at *6 (D. Conn. June 23, 2000)(citations omitted); see also Johnson v. Schmitz, 2002 WL 31863520, at *4-5 (D. Conn. Dec. 19, 2002)(multiple citations omitted). However, once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if it is an oral agreement and even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing. Pultney Arms, LLC v. Shaw Industries, Inc., 2002 WL 31094971, at *2 (D. Conn. Sept. 6, 2002); Johnson, 2002 WL 31863520, at *4; Brown, 2000 U.S. Dist. LEXIS 9153, at *5-6. Moreover, once a settlement is reached, the "clear and unambiguous terms of the agreement" are not subject to repudiation by the parties; rather, the agreement will be summarily enforced by the court. Brown, 2000 US Dist. LEXIS, at *6; Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc., 225 Conn. 804, 812, 626 A.2d 729, 733 (1993). "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement in a meaningful way to resolve legal disputes." Audubon, 225 Conn. at 811.

New Horizon Fin. Servs., LLC v. First Fin. Equities, Inc., 2003 WL 22004255, at *4 (D. Conn. Mar. 26, 2003). See also MacDonald v. Dragone Classic Motor Cars, 2003 WL 22056626, at *6 (D. Conn. Apr. 29, 2003).

Based upon plaintiff's own testimony and the exhibits presented, it is clear that a

---

[7]During the post-hearing argument, plaintiff represented that this is the first lawsuit he has "experienced" and his first settlement. However, the computerized docket system for the federal court (CM/ECF) reveals that plaintiff has had three prior lawsuits in this district, Stiggle v. Corrections, 3:95 CV 466 (AHN)(lawsuit and appeal dismissed), Stiggle v. Gillis, 3:03 CV 841 (SRU)(withdrawn by plaintiff), and Stiggle v. Armstrong, 3:95 CV 1800 (TPS), settled on March 24, 1999 (Dkt. #47).

settlement agreement was reached – indeed, plaintiff already had signed a Stipulation of Dismissal and twice signed General Releases. The facts presented here are even stronger than those in the cases cited above, where the parties had not yet signed written settlement documents.[8] Even assuming arguendo that plaintiff received a return telephone call on his cell phone as he was returning to Norwich on February 9, 2004, just after he signed the second General Release, any information he received does not justify a repudiation of the settlement he previously had reached. By his own testimony, prior to entering into this settlement, he was aware of the second alleged incident from a newspaper article and he had spoken with the alleged victim of that incident. If his true agenda in bringing this lawsuit was to "punish the defendants," since he acknowledges that he is unlikely to recoup any proceeds from a settlement or verdict, he easily could have declined to enter into this settlement at any time prior to February 9, 2004.

### III. CONCLUSION

Accordingly, for the reasons stated above, defendants' Motion to Enforce Settlement Agreement (Dkt. #78) is granted.[9]

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small

---

[8] To the extent there is any ambiguity as to the amount of the settlement, that issue is academic, as the parties agreed as to the net figure available to plaintiff; however, as plaintiff concedes, the settlement figure is largely irrelevant in that plaintiff would not receive any proceeds anyway. See note 5 supra.

[9] A collateral issue then is to whom such the settlement check should be made. During post-hearing arguments, plaintiff argued that defense counsel should issue the check to him, in order for him to pay his outstanding medical bills. Defense counsel obviously objects, particularly in light of Exhibit F. If plaintiff and defense counsel are unable to resolve this issue between themselves, then **on or before June 7, 2004**, defense counsel may request a supplemental hearing before the Court on this limited issue.

v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 12th day of May, 2004.

                                               _____/s/_____
                                               Joan Glazer Margolis
                                               U.S. Magistrate Judge